**Floyd HURST, Plaintiff–Appellant,**

v.

**PILINGS & STRUCTURES, INC., A Florida Corporation, Defendant–Appellee,**

**Florida Insurance Guaranty, Association, Third–Party Defendant.**

No. 89–5469.

United States Court of Appeals, Eleventh Circuit.

March 13, 1990.

---

505

Ronald Payne, Ft. Lauderdale, Fla., for plaintiff-appellant.

George D. Gabel, Jr., Jacksonville, Fla., for defendant-appellee.

Jesse W. Miller, Islamorada, Fla., Ronald Fitzgerald, Ft. Lauderdale, Fla., for third-party defendant-correspondence only/not a party.

Before HATCHETT and EDMONDSON, Circuit Judges, and DYER, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Appellant Hurst, a diver, claims that he was injured as he attempted to climb out of the water onto his employer's spud barge. The issue on appeal is whether the spud barge was a "vessel in navigation" for purposes of the Jones Act, 46 U.S.C.A.App. § 688 (West Supp.1989). The district court granted summary judgment for Hurst's employer, finding as a matter of law that the spud barge was not a vessel. We affirm.

The Jones Act permits a seaman injured in the course of employment to bring an action against his employer for damages. To qualify for seaman status, a worker must satisfy the following criteria:

(1) he must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

*Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d 447, 452 (5th Cir.1980).

Whether these criteria are satisfied is ordinarily a question for the trier of fact. That "the question of seaman status should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances and that even marginal Jones Act claims should be submitted to the jury" is well established. *Bernard v. Binnings Constr. Co., Inc.,* 741 F.2d 824, 827 (5th Cir.1984). Summary judgment is proper, however, "where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences on any of the elements of the seaman test." *Bernard,* 741 F.2d at 828. The facts in this case are undisputed, and our job is to study the facts to determine if reasonable persons might draw different inferences about whether Piling's spud barge was a vessel. *See Bernard,* 741 F.2d at 828.

At the time of Hurst's injury, appellee Piling and Structures, Inc. ("Piling"), employed Hurst as a diver to help repair a seawall in the Intracoastal Waterway near Ft. Lauderdale, Florida. Hurst worked off Piling's 120–foot "spud barge." A spud barge is a flat-decked floating structure that has devices similar to legs, called spuds, which are lowered from underneath the barge and pushed into the waterway floor to anchor the structure in place. Piling's spud barge had no means of self-propulsion, but Piling repositioned it each day along the seawall by lifting one of the two spuds and pushing the free end around, then lowering that spud and repeating the process at the other end.

The barge was constructed for use as a work platform. Hurst used the barge as a diving platform, receiving his air supply through a hose connected to a pump on the deck. Piling did not use the barge for hauling cargo; the barge carried two smaller barges, a push boat, and a mobile crane (equipment related to the spud barge itself). The spud barge had no navigational lights, no cabin, no pilothouse, and no crew's quarters.

The record includes evidence that Piling moved the barge to job sites as far away as the Florida Keys and the Bahamas. During the six-month period that Hurst worked for Piling, the barge was moved to a new job site once; this job took five or six days, and then the barge returned to the Ft. Lauderdale seawall. Piling intended to move the barge to a new job site three days after Hurst's injury. To move the barge a considerable distance, it was pushed by a push boat or towed by a tow boat. The barge had a valid Coast Guard inspection, apparently necessary to permit its being towed or pushed across navigable waters.

■ In determining whether a special purpose structure like a spud barge is a vessel, the critical inquiry is " 'the purpose for which the craft was constructed and the business in which it is engaged.' " *Cook v. Belden Concrete Prods., Inc.,* 472 F.2d 999, 1001 (5th Cir.1973) (quoting *The Robert W. Parsons,* 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903)). The Fifth Circuit has defined several factors common to floating work platforms which are not vessels: (1) the structures were constructed and are used primarily as work platforms; (2) they were moored or otherwise secured at the time of the injury; and (3) although the structures are capable of movement and have been moved across navigable waters in the course of normal operations, any transport function they perform is merely incidental to their primary purpose of serving as work platforms. *Bernard,* 741 F.2d at 831.

■ That Piling's spud barge was constructed for the purpose of serving as a work platform is undisputed, and that the barge was engaged as a work platform at the time of Hurst's alleged injury is also undisputed. The barge was secured at least temporarily to the waterway floor at the time of the injury, and the barge's only transport function—carrying its own push boat, smaller barges, and crane—was incidental to its primary purpose of serving as a work platform.

Piling's barge is like the construction platforms in *Leonard v. Exxon Corp.,* 581 F.2d 522 (5th Cir.1978), and *Watkins v. Pentzien, Inc.,* 660 F.2d 604 (5th Cir.1981), which were as a matter of law not vessels. *Cf. Colomb v. Texaco, Inc.,* 736 F.2d 218

(5th Cir.1984) (highly mobile, submersible drilling barge is vessel). *Leonard*, which is authority in this Circuit,* and *Watkins* concerned structures consisting of multiple flat-decked barges fastened together and held in place near the river banks by spuds or steel cables. These barges had no means of self-propulsion and were used as floating work platforms for pipeline construction. *Leonard*, 581 F.2d at 524; *Watkins*, 660 F.2d at 607. In addition, the *Leonard* barge had some transport functions. *Leonard*, 581 F.2d at 525 (Godbold, J., dissenting) (transported traditional cargo—assembled pipeline—a short distance).

We agree with the district court's conclusion that as a matter of law Piling's spud barge was not a vessel in navigation. AFFIRMED.

Garen E. Dodge, McGuiness & Williams, Washington, D.C., for amicus-Equal Employment Advisory Council.

Before FAY and COX, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

---

* In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

